# United States Court of Appeals
## For the First Circuit

No. 19-2189

CHIMENE MBAGUE NANDJOU, individually and as Administratrix of
the Estate of Menelik Tchouamou and the Estate of William
Tchouamou Ganjui, and as Mother and Next Friend
of A.L.S. and W.T.M.,

Plaintiff, Appellant,

v.

MARRIOTT INTERNATIONAL, INC.; MARRIOTT WORLDWIDE
CORPORATION; RELUXICORP, INC. d/b/a The Residence Inn by
Marriott,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

---

Before

Thompson and Barron,
Circuit Judges.[*]

---

Ross E. Schreiber, with whom The Schreiber Law Firm LLC was
on brief, for appellant.
Paul K. Leary, Jr., with whom Michael A. Savino and Cozen
O'Connor were on brief, for appellees.

---

[*] Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's opinion in this case. The remaining two
panelists therefore issued the opinion pursuant to 28 U.S.C.
§ 46(d).

January 15, 2021

**BARRON**, <u>Circuit Judge</u>.  This appeal arises out of a suit for damages that Chimene Mbague Nandjou brought against three defendants in connection with the April 2016 drowning deaths of her husband, William, and two-year-old son, Menelik, in a hotel pool in Montreal, Canada.  The defendants are Marriott International, Inc.; Marriott Worldwide Corporation; and Reluxicorp, Inc., the Marriott franchisee in Montreal where the drowning occurred.

Nandjou's suit was removed from the local Massachusetts court in which she had filed it to the United States District Court for the District of Massachusetts, and the District Court, after finding personal jurisdiction over the three defendants, then dismissed it based on the doctrine of <u>forum non conveniens</u> after determining that an adequate alternative forum for the claims was available in Canada.  Nandjou now appeals that ruling.

The defendants contend that dismissal on that basis was proper and, alternatively, that the order of dismissal must be affirmed on the ground that there is a lack of personal jurisdiction over them.  We reverse the District Court's dismissal of Nandjou's claims based on <u>forum non conveniens</u> but affirm its ruling finding personal jurisdiction over the three defendants.

**I.**

The following facts, which we draw from Nandjou's complaint and the limited discovery that was allowed, are not in

- 3 -

dispute. At the time of the events that gave rise to this suit, Nandjou, her husband, and their three children lived in Lynn, Massachusetts. At that residence, they received numerous direct mailings from the Marriott defendants advertising various Marriott properties. On at least three occasions, Marriott sent materials to Nandjou and her husband's address that promoted "The Residence Inn by Marriott" in Montreal. In the spring of 2016, after having viewed those mailings, which included photographic depictions of the hotel and described its pool, Nandjou's husband booked a stay there.

On that trip, on April 20, 2016, Nandjou's husband took the three children to the hotel pool to swim. No one else was present at the scene at the time. Around 6:00 p.m., William, who was holding two-year-old Menelik, began to drown. The other two children, ages eight and four, attempted to rescue their father and brother but were unable to do so.

Another hotel guest, visiting from Arizona, eventually came along. She was able to gain access to the pool area and called emergency services. Emergency personnel began to arrive approximately twenty minutes later. They transported Nandjou's son and husband to a nearby hospital in Montreal, where her husband was pronounced dead. Her son was pronounced brain dead two days later.

Nandjou filed suit in September 2018, in the Superior Court of Suffolk County, Massachusetts, against Reluxicorp, Inc., which is the owner of the hotel in question, a franchisee of Marriott, and a Canadian corporation that has its principal place of business in Montreal; Marriott International, Inc., which is a Delaware corporation that has its principal place of business in Maryland; and Marriott Worldwide Corporation, which is a wholly owned subsidiary of Marriott International that is both incorporated and headquartered in Maryland. Nandjou's complaint asserted wrongful death claims against Reluxicorp and the two Marriott defendants, as well as a claim for vicarious liability against each of the Marriott defendants based on Reluxicorp's status as a Marriott franchisee. She also brought a claim against all three defendants for negligent infliction of emotional distress on the surviving children, as well as a claim against all three defendants for the conscious pain and suffering endured by Menelik, her two-year-old son who died following the incident at the pool. Nandjou's complaint sought, among other types of relief, punitive damages.

The defendants removed the case to the District of Massachusetts based on diversity of citizenship on October 25, 2018. They then filed a motion in that court in November 2018 to dismiss Nandjou's claims based on the doctrine of forum non

conveniens and pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over any of the three defendants.

The District Court denied that motion, but the defendants followed up by filing a motion for reconsideration or for a certificate of appealability on their motion to dismiss. On review of the motion for reconsideration, the District Court first addressed whether there was personal jurisdiction over the three defendants and concluded that there was. Nandjou v. Marriott Int'l, Inc., No. 18-cv-12230-ADB, 2019 WL 2918043, at *1 (D. Mass. July 8, 2019).

The District Court started by concluding that the Marriott defendants' marketing in Massachusetts concerning the Reluxicorp-owned hotel in Canada where the drownings occurred could be attributed to Reluxicorp because "the Defendants all used the Marriott name and coordinated their business and marketing in a manner that may reasonably have created the appearance of authority to bind one another." Id. at *4. Then, after finding Massachusetts' long-arm statute satisfied, id. at *5, the District Court assessed whether the Marriott defendants' contacts in Massachusetts via its marketing in that state were sufficient, as a matter of federal constitutional due process, to satisfy the three prongs of the test for establishing specific jurisdiction over those two defendants and Reluxicorp: relatedness, purposeful availment, and reasonableness, id. at *5-7. Focusing on the

- 6 -

advertisements promoting the Reluxicorp-owned hotel that the Marriott defendants had sent to Nandjou's home in Massachusetts, the District Court held that they were. Id. at *6-7.

There remained, however, the defendants' motion for reconsideration of the District Court's denial of the motion to dismiss based on the doctrine of forum non conveniens. The District Court decided to allow briefing and discovery on that issue. Id. at *8. Thereafter, the District Court granted the defendants' renewed motion to dismiss on forum non conveniens grounds and ordered dismissal of Nandjou's claims pursuant to that doctrine subject to the limitation that the defendants continue to submit to personal jurisdiction in Canada on Nandjou's claims in connection with the drownings in the parallel action that she had filed against them in a court in that country. Nandjou v. Marriott Int'l, Inc., No. 18-cv-12230-ADB, 2019 WL 5551438, at *6 (D. Mass. Oct. 28, 2019).

Nandjou timely appealed from that ruling on November 15, 2019. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### A.

"The doctrine of forum non conveniens . . . permits a court to dismiss a case because the chosen forum (despite the presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place." Howe v.

- 7 -

Goldcorp Invs., Ltd., 946 F.2d 944, 947 (1st Cir. 1991). "[T]he practical effect" of a dismissal on these grounds is to require the plaintiff "to file his complaint in a more convenient forum elsewhere" in order to obtain relief. Id.

Congress has codified a federal district court's authority to transfer a case pursuant to the doctrine of forum non conveniens when a federal forum other than the one in which the plaintiff has chosen to bring suit is available to hear the claims elsewhere in this country. See Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 60 (2013) (citing 28 U.S.C. § 1404(a)). A federal district court also has the power to dismiss a case pursuant to that doctrine, however, when the alternative available forum for the case is in a foreign country. See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430 (2007).

Because the doctrine of forum non conveniens permits a federal district court to deprive a plaintiff of availing herself of her "home forum" even when she otherwise would be legally entitled to bring suit in it, the bar for a district court to dismiss a suit pursuant to the doctrine is a high one. Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007). The doctrine "is intended to 'avoid trials in places so "inconvenient" that transfer is needed to avoid serious unfairness,'" id. at 52 (emphasis added) (quoting Howe, 946 F.2d at 950), as it guards against not mere inconvenience but a plaintiff "by choice of an inconvenient forum"

- 8 -

litigating in a manner that would "vex, harass, or oppress the defendant by inflicting upon him expense" or unnecessary trouble, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (quotation marks omitted). For that reason, "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947); Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 720 (1st Cir. 1996).

The first step of the requisite inquiry under the doctrine entails consideration of whether an adequate alternative forum exists to the one that the plaintiff has chosen for her suit. Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000). If there is no adequate alternative forum, then there is no basis for dismissal under the doctrine and thus no need to reach the second step. See id. In the event that there is an adequate alternative forum available, however, a court must weigh at the second step of the inquiry what are known as the public interest factors (such as the relative interests of the local forum and the government with jurisdiction over the alternative forum) and the private interest factors (such as the burdensomeness to the parties and witnesses of having the case proceed in either of the available fora). Id.

Dismissal based on the doctrine of forum non conveniens is not appropriate when the consideration of the private and public interest factors reveals that, as between the plaintiff and the moving party, the relative burdens of litigating the case in the plaintiff's home forum are in "equipoise," Adelson, 510 F.3d at 54, or only marginally favor litigating it in the alternative forum, see, e.g., SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1103 (11th Cir. 2004) (reversing district court's dismissal where "the convenience factors were about equal"); Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 640 (3d Cir. 1989) ("The conclusion that a balance at equipoise or tipped toward the defendant favors dismissal is . . . an error of law."). To establish the basis for dismissing a case based on forum non conveniens, a defendant bears a "heavy burden," Adelson, 510 F.3d at 52, and must show that the assessment of the relevant public and private interests favors the case being litigated in the foreign forum to such a degree that it suffices to overcome the presumption that the plaintiff is entitled to bring her case in her home forum, see Iragorri, 203 F.3d at 15.

We also note, due to its relevance to our analysis below, that in undertaking the necessary inquiry into the private interest factors at the second step, a court must pay close attention to, among other things, the nature of the plaintiff's claims and the evidence that would be relied upon to adjudicate them, while giving

particular attention to where the witnesses that the parties would rely upon are located and how burdensome it would be for them to appear in either the home or the foreign forum. See Gilbert, 330 U.S. at 508; see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981) (explaining that "[e]ach case turns on its facts" (alteration in original) (quoting Williams v. Green Bay & W. Ry. Co., 326 U.S. 549, 557 (1946))); Howe, 946 F.2d at 951-52 (carefully examining the elements of the plaintiff's claims in evaluating the location of the relevant evidence). In that assessment, moreover, due consideration must be given to how many such witnesses are third parties to the litigation and whether, despite their third-party status, they would be subject to compulsory process in either the home or the foreign forum. See, e.g., Howe, 946 F.2d at 951 ("[O]nly Canadian courts, not courts within the United States, have the legal power to compel the testimony of twelve Canadian potential witnesses who are not under the control of any party.").

Given the nature of the inquiry a court must undertake under the forum non conveniens doctrine, we review a motion to dismiss a claim on that basis only for an abuse of discretion, Interface Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 101 (1st Cir. 2009), due to the district court's greater familiarity with the practical realities of the litigation at hand. And, we emphasize, a district court abuses its discretion in dismissing a

case based on forum non conveniens only if it has "(1) failed to consider a material factor; (2) substantially relied on an improper factor; or (3) assessed the proper factors, but clearly erred in weighing them." Id. (quoting Adelson, 510 F.3d at 52).

**B.**

There is no question that the District of Massachusetts counts as Nandjou's home forum in this case, even though she now lives in Georgia. See Adelson, 510 F.3d at 53 (explaining that although the plaintiff was "not a Massachusetts domiciliary," the U.S. District Court for the District of Massachusetts was "still deemed a 'home forum' where the alternative [was] foreign"). Thus, the District Court correctly articulated the operative standards for assessing the motion to dismiss her claims pursuant to the doctrine of forum non conveniens, see Nandjou, 2019 WL 5551438, at *2-3, by expressly recognizing at the outset of its opinion that Nandjou enjoyed a presumption against being denied her "choice of forum" based on concerns about the inconvenience to the defendants of litigating in it, id. at *2 (quoting Piper Aircraft Co., 454 U.S. at 241); that the defendants bear a "heavy burden" on a motion to dismiss on the grounds of forum non conveniens, id. (quoting Adelson, 510 F.3d at 52); and that the balance of public and private interests must "strongly favor litigating the claim in the second forum" to warrant dismissal, id. (emphasis added) (quoting Adelson, 510 F.3d at 52).

- 12 -

Accordingly, we are not persuaded by Nandjou's threshold contention that the District Court committed a legal error by failing even to apply the presumption against depriving a plaintiff of her home forum based on concerns about the inconvenience to the defendant. The District Court did, as Nandjou highlights, state at a key point in its analysis that the private interests "weigh in favor" of litigating the case in the Canadian forum without expressly stating that they strongly favor litigation there. See id. at *5. But, when read in context, that statement, like the District Court's analysis of the record as a whole, is best understood to have been premised on a proper understanding that the nature of the showing that the defendants here must make to be entitled to have Nandjou's claims dismissed on forum non conveniens grounds is a demanding one.

Nandjou separately contends, however, that the District Court clearly erred in applying this demanding standard to the facts of this case. As we will next explain, we agree.

## C.

There is no dispute between the parties that the District Court correctly determined at the first step of the forum non conveniens analysis that an adequate alternative forum did exist in Canada. See id. at *3. In fact, at the time of the District Court's ruling, Nandjou had filed a pending action against the three defendants in a court in Canada in which she sought recovery

- 13 -

for their respective roles in connection with the drownings of her husband and son.  See id.

There also is no dispute between the parties that the District Court correctly determined, at the second step of the analysis, that the public interest factors were "of neutral weight," id. (capitalization altered), and thus that those factors were "indeterminant" as to whether they favored litigating the case in the Massachusetts or the Canadian forum, id. at *5.  The District Court rightly emphasized in so ruling that both Massachusetts and Canada had an interest in the outcome of the litigation, as the drowning victims were both Massachusetts residents but the drownings were allegedly caused by the negligence of a Canadian company in Canada.  Id. at *4.

Nandjou contends, however, that the District Court clearly erred in concluding that an assessment of the private interest factors warranted the dismissal of her claims.  The District Court based the determination that they did on a pair of key conclusions -- namely, that "the most important witnesses will be those who can speak to the hotel's policy regarding pool supervision and the exact circumstances on the day of the accident, including the cause of Plaintiff's family members' deaths" and that the "Defendants have demonstrated that the majority of those relevant witnesses are Canadian residents."  Id. at *6.

- 14 -

We conclude that Nandjou is right that the District Court's assessment of the private interest factors -- and thus its assessment of the second step of the requisite inquiry as a whole -- is clearly wrong. To explain why, it helps to separate out Nandjou's claims.

**1.**

To start, as Nandjou points out, the District Court's analysis of the private interest factors cannot suffice to justify the dismissal of her vicarious liability claim against each of the two Marriott defendants. This claim is, of course, dependent on a showing of Canadian-based Reluxicorp's underlying liability. In that respect, it, like Nandjou's other claims, depends on a showing about the circumstances at the hotel pool on the day of the accident in Montreal. But, in its nature, this claim -- unlike the others that Nandjou brings -- also is dependent on showings that relate to the relationship between Reluxicorp as a Marriott franchisee and the Marriott defendants, given that whether the Marriott defendants are vicariously liable is a function of the nature of the franchisor-franchisee relationship between them and Reluxicorp.

As Nandjou highlights, the evidence bearing on that relationship concerns, among other things, the extent to which the Marriott defendants held out that Canadian franchisee to potential customers as if it were owned, operated, and controlled by

Marriott.  See Thalin v. Friden Calculating Mach. Co., 153 N.E.2d 658, 661 (Mass. 1958) (evaluating whether plaintiff had established franchisor's liability for franchisee's negligence by considering, among other things, whether there was evidence "of present or past holding out" by the franchisor).  That evidence in turn depends on testimony from witnesses who, so far as the record reveals, are not all or even in the main located in Canada, given that each of the Marriott defendants is based in the United States, not Canada.  Thus, when the full picture is considered as to the witnesses in play for the vicarious liability claim against each of the Marriott defendants, we do not see a basis for concluding that the presumption in favor of having the case litigated in the home forum chosen by the plaintiff has been overcome.  Cf. Duha v. Agrium, Inc., 448 F.3d 867, 879 (6th Cir. 2006) ("The dismissal of distinct claims effectively omitted from the forum non conveniens analysis is not within the district court's discretion.").

**2.**

That said, the District Court's order of dismissal based on forum non conveniens was not limited to the claim for vicarious liability against the Marriott defendants.  It encompassed all claims against all defendants, and the other claims -- including the ones brought against the Marriott defendants and those brought against Reluxicorp -- are for conduct that occurred in Canada and do not so directly target conduct that concerns the relationship

- 16 -

between Reluxicorp and the Marriott defendants.  Moreover, if it were proper to dismiss those claims based on forum non conveniens, then it might well be proper to dismiss the suit as a whole on that basis, given the relationship between the vicarious liability claim against both of the Marriott defendants and the other claims that Nandjou brings.  See U.S.O. Corp. v. Mizuho Holding Co., 547 F.3d 749, 750 (7th Cir. 2008) ("There is no reason for identical suits to be proceeding in different courts in different countries thousands of miles apart."); cf. Olympic Corp. v. Societe Generale, 462 F.2d 376, 379 (2d Cir. 1972) ("[T]he benefits of impleader might be taken into account in a close case in deciding whether or not to dismiss for forum non conveniens . . . ."). Nevertheless, we cannot sustain the District Court's forum non conveniens determination as to the other claims either.

In concluding that the balance of witnesses who would supply the most important testimony for the remaining claims were Canadians who were not themselves parties to -- or employees of parties to -- the suit, the District Court made the following tally.  It noted that seven of the eight potential witnesses referred to in a Canadian police report concerning the incident at the pool were from Canada and that only one, the Arizona resident whom we mentioned above, was from the United States.  Nandjou, 2019 WL 5551438, at *5.  It then further noted that the coroner and all of the doctors who treated the victims of the drownings

were based in Montreal and were unwilling to travel to Massachusetts.  Id.  In addition, it noted that none of these Canadian witnesses was an employee of a party to the suit and that a number of other non-party witnesses were located in Canada, including the first responders who were on the scene soon after the drownings, six police officers who investigated the drownings, and the building inspector.  Id.  Thus, even setting aside the employees of the defendants who were potential witnesses, the District Court concluded that there were twenty-five Canadian third-party witnesses who potentially could provide testimony relevant to the determination of liability on these claims.  Id.

By contrast, the District Court concluded, Nandjou had identified only:  one U.S.-based witness (from Arizona and not Massachusetts) who was present at the pool in the aftermath of the drownings; her two children; two Massachusetts residents (Kim and Gregg Pierce, who were guests at the hotel at the time); and a number of damages witnesses.  Id. at *6.  The District Court further determined -- supportably -- that the Arizona resident's testimony did not render duplicative the testimony of the Canadian residents who arrived on the scene at the pool, given that the Arizona witness stated in a deposition that she was not continuously present there in the aftermath of the drownings, as she left for periods of time to call the police and to help the children call their mother.  Id.  The District Court also

- 18 -

discounted the significance of the Pierces' testimony on the ground that "they did not actually observe the accident, but merely observed the aftermath, including the first responders at the scene." Id. And, finally, the District Court noted that, although Nandjou had identified a number of Massachusetts residents who could supply evidence bearing on the case in addition to the Pierces and her children, they could do so only as to "damages" and not liability. Id.

For these reasons, the District Court concluded that the balance of the private interest factors sufficed to support having the case litigated in Canada rather than Massachusetts and thus dismissing Nandjou's claim pursuant to the doctrine of forum non conveniens. Id. After all, the District Court determined, there were an overwhelming number of third-party Canadian witnesses who could testify to matters concerning liability. Id.

This accounting, however, gives too little weight to the fact that the only potential witnesses who were present when the drownings occurred were Nandjou's two surviving children. It is true that they are not third parties. But, they are also obviously central witnesses who hail from this country rather than Canada. And they have the status as key witnesses not only when it comes to the issue of damages, given their special capacity to describe the trauma that they endured as a result of the events that transpired, but also as to liability, because they alone can

describe the scene as it looked at the moment the drownings occurred and until any assistance came.

In addition, while we agree with the District Court that the witness from Arizona cannot be said to render testimony from all others who arrived on the scene in the immediate aftermath of the tragedy duplicative, she is herself a significant third-party, non-Canadian witness to the events. In fact, she was the first to arrive at the scene after the drownings occurred. The Massachusetts-based Pierces are similarly potentially significant third-party witnesses, as they, too, were on the scene in the immediate aftermath of the drownings and as they are not in any evident respect less well positioned than any of the other hotel guests from Canada who arrived in the wake of the drownings to give relevant testimony bearing on the conditions at the pool at that time.

In total, then, Nandjou has identified five non-Canadian witnesses who are well positioned to provide live testimony as to liability, of whom only two are not third parties. Additionally, those two witnesses are not only the only ones who were actually present when the drownings occurred but also are young children who, if forced to testify in Montreal, would be required to return to the country of their loved ones' deaths. Cf. Guidi v. Inter-Cont'l Hotels Corp., 224 F.3d 142, 145 (2d Cir. 2000) (reversing a dismissal based on forum non conveniens in part because the

- 20 -

district court failed to consider the "emotional burden" it would impose on the plaintiffs to return to Egypt, where their loved ones were killed).

Moreover, although the District Court discounted the numerous additional Massachusetts-based residents who could supply evidence concerning damages, Nandjou, 2019 WL 5551438, at *6, we do not see why the fact that these witnesses would not be testifying as to liability provides a basis for concluding that the burdensome nature of having them appear in a Canadian court is of little importance to the inquiry. We are not aware of authority that suggests that, under the doctrine of forum non conveniens, testimony from witnesses regarding damages is inherently less crucial than testimony from witnesses regarding liability.

Insofar as the defendants contend that the distinction between liability and damages witnesses does matter to the inquiry into the balance of private interests, they appear to rely on Iragorri v. International Elevator, 203 F.3d at 16. But, they are wrong to do so, given how the facts of that case differ from this one.

There, we reviewed a district court decision dismissing a case on forum non conveniens grounds that arose from an accident in which the plaintiff's late husband fell to his death in an elevator shaft in Colombia and sued the company that maintained the elevator in the District of Maine. Id. at 10-11. With respect

to the private interest factors, we noted that "problems of proof would be exacerbated, not ameliorated, by a trial in Maine," in part because "crucial liability witnesses" were located in Colombia, because their "credibility [would be] under attack" at trial, and because, if the trial were held in Maine, they "most likely would appear, if at all, by video deposition with the assistance of a translator."  Id. at 16.  By contrast, we explained, the plaintiff's "suggested witnesses were experts, concerned primarily with damages," and their "testimony would be more amenable to depositions and translation."  Id.

This review of our analysis in Iragorri shows that the key distinction there was not that one set of witnesses would be providing evidence about liability while the other would be providing evidence about damages only.  Rather, what mattered was that the liability witnesses would need to provide live testimony, while the damages witnesses were less likely to need to do so.  Here, however, there is no similar ground for distinguishing between the sets of witnesses, so far as the record reveals.  Rather, live testimony from the damages witnesses for Nandjou may be crucial to their presentation, given that they plan to provide evidence about the type of person the victim was and the effect of his loss on his wife and daughters.  And the District Court made no finding that the Canadian non-party liability witnesses for the defendants whom it concluded were "most important" would be unable

- 22 -

to provide the critical aspects of that testimony through means other than live testimony.  See Nandjou, 2019 WL 5551438, at *6.

Thus, on this record, we do not agree that there is a supportable basis for saying that the defendants have met their heavy burden to show that concerns about private convenience justify depriving Nandjou of the forum she chose, which is in this country.  That is especially true given the critically important role that her young children may play at trial as witnesses, as they alone are in a position to testify about the conditions at the pool at the moment of the drownings.

Nor does the relevant precedent indicate otherwise.  It is evident that this case stands in stark contrast to those in which we have affirmed a district court's dismissal of an action based on forum non conveniens.  For example, in Howe v. Goldcorp Investments, the principal analogue on which the defendants rely, we concluded that dismissal was not an abuse of discretion where "most of the evidence [was] in Canada and most of the witnesses [were] in Canada."  946 F.2d at 951.  Indeed, except for the plaintiff, "no resident of the United States 'ha[d] knowledge relevant to the matters alleged in the amended complaint.'"  Id. (internal citation omitted).  We found that the action had "little to do with Massachusetts or any other jurisdiction in the United States" but had "a great deal to do with Canada."  Id. at 952-53.

The same cannot be said here.  As we have just cataloged, the most critical witnesses reside in the United States, and there is no reason to discount the potential import of the several third-party, non-Canadian witnesses who were present at the pool in the drownings' immediate aftermath or the numerous Massachusetts-based witnesses whose live testimony bears on damages.  Moreover, while the defendants have estimated that twenty-five non-party witnesses reside in Canada, they have not explained why live testimony from all of those witnesses is critical.  See Iragorri, 203 F.3d at 16. Thus, we conclude that the District Court "clearly erred in weighing" the private interests involved, Adelson, 510 F.3d at 52, and that the balance of public and private interest factors did not warrant dismissal.

## III.

The defendants contend that we may affirm the District Court's dismissal of Nandjou's claims on the alternative ground that that there is no personal jurisdiction over them.  See John Hancock Life Ins. Co. v. Abbott Lab'ys, 863 F.3d 23, 34 (1st Cir. 2017) ("Although [the appellee] has not filed a cross-appeal, we have jurisdiction to consider a prevailing party's alternative arguments in defense of a judgment where, as here, the arguments were made below.").  We conclude, however, that the District Court did not err in ruling otherwise, Nandjou, 2019 WL 2918043, at *7,

- 24 -

and thus that we may not affirm its dismissal of Nandjou's claim on this independent ground.

## A.

The District Court applied the "prima facie" standard to assess the sufficiency of Nandjou's showing as to personal jurisdiction. Id. at \*1. Accordingly, the District Court evaluated "whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Id. (quoting Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013)). Both parties accept that the application of this standard was appropriate. We thus "must accept the plaintiff's (properly documented) evidentiary proffers as true," Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995), and "construe them in the light most congenial to the plaintiff's jurisdictional claim," Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). We review the District Court's application of that standard to the record de novo. Adelson, 510 F.3d at 48.

Because the District Court's subject-matter jurisdiction in this case was premised on diversity of citizenship, we act as the "functional equivalent" of a state court sitting in Massachusetts for the purpose of assessing personal jurisdiction. Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir.

2020) (quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016)). We therefore must evaluate whether the exercise of personal jurisdiction over the defendants complies with both the requirements of the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Id.

The defendants do not argue that the long-arm statute imposes any limit that the Federal Constitution does not. As any argument to the contrary is waived, we "train the lens of our inquiry exclusively on the federal constitutional analysis." Id.

For there to be personal jurisdiction over a defendant as to a claim, the Due Process Clause requires that the defendant must "have sufficient minimum contacts with the state, such that 'maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Adelson, 510 F.3d at 49 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Such contacts must be sufficient to sustain a theory of either general or specific jurisdiction. See Kuan Chen, 956 F.3d at 55. In view of Daimler AG v. Bauman, 571 U.S. 117 (2014), however, Nandjou pursues a theory of specific personal jurisdiction only. Thus, for each claim and each defendant, she must make a tripartite showing: that the claim is sufficiently related to the defendant's contacts with Massachusetts, that the defendant's contacts with Massachusetts constitute purposeful availment of the protections

and privileges of conducting business in the Commonwealth, and that the exercise of jurisdiction there is reasonable. Nowak, 94 F.3d at 712-13. The District Court concluded that, under the prima facie standard, Nandjou met the bar on all three fronts for all of her claims against all of the defendants. See Nandjou, 2019 WL 2918043, at *7.

**B.**

We start with the claims Nandjou brings against the Marriott defendants. The defendants do not attempt to distinguish between the claims against them in developing their only argument in support of their assertion that the District Court erred in finding that Nandjou made the requisite showing as to personal jurisdiction over them. That argument concerns the showing Nandjou makes as to the relatedness prong. Moreover, in pressing that argument, the defendants contend only that the District Court erred in finding that their marketing activities in Massachusetts suffice to show that their in-Massachusetts contacts satisfy the relatedness requirement. Thus, we address only that portion of the District Court's analysis in evaluating whether there is personal jurisdiction as to the Marriott defendants. See Marek v. Rhode Island, 702 F.3d 650, 655 (1st Cir. 2012) (explaining that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990))).

The Marriott defendants emphasize that Nandjou's claims against them focus on duties that Nandjou contends that they breached through their actions (or failures to act) in Canada, not Massachusetts. They also emphasize that the Massachusetts-based activity on which the District Court relied in finding that it had personal jurisdiction over them consists of a marketing campaign that, even if it induced Nandjou's family to stay at the hotel in Montreal and to use its pool, did not itself play anything more than a but-for role in causing the drownings themselves. The Marriott defendants thus contend that those Massachusetts-based contacts have too attenuated a connection to the tortious conduct alleged to satisfy the due process-based, personal jurisdiction requirement that in-forum contacts must be related to the claim at issue.

We may skip over the fact that among the claims that Nandjou has brought against the Marriott defendants is a claim for vicarious liability, which depends in significant part on the nature of the franchisor-franchisee relationship rather than solely a breach of duty that occurred only in Canada. For, even if we accept the premise on which the defendants' assertion of error by the District Court rests, and thus focus our analysis exclusively on the connection between the Marriott defendants' marketing activity in Massachusetts and the claims against them that seek to hold them liable for their own breaches of duty rather

- 28 -

than vicariously for the breach of duty by Reluxicorp, we are not persuaded by the contention that Nandjou failed to make the requisite showing of relatedness.

The Marriott defendants are correct that, in <u>Nowak</u> v. <u>Tak How Investments</u>, we noted that a "proximate cause standard better comports with the relatedness inquiry" with respect to tort claims than a pure "'but for' requirement," which "has in itself no limiting principle." 94 F.3d at 715. For that reason, the Marriott defendants contend that the fact that their marketing activities in Massachusetts were at most a but-for cause of the drownings -- rather than a proximate one -- precludes us from treating those activities as the kind of contacts that could satisfy the relatedness requirement.

But, as the Marriott defendants themselves acknowledge, we explained in <u>Nowak</u> that "strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive" and that "the first prong of the jurisdictional tripartite test is not as rigid" as the proximate cause inquiry in the tort context. <u>Id.</u> Thus, even if the Marriott defendants are right that their direct-mail campaign, in and of itself, did not proximately cause the drownings, that fact alone would not end our inquiry with respect to whether that campaign could nonetheless suffice to satisfy the relatedness requirement.

The Marriott defendants do not dispute that <u>Nowak</u> recognized that where a corporation "directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result," <u>id.</u>, even though they may not have proximately caused it. But, the Marriott defendants emphasize, <u>Nowak</u> poses no problem for them because that case involved a much more extensive course of dealing between the plaintiff (also the family member of a patron of a foreign hotel who drowned in its pool) and the defendant than this one does. They thus argue that <u>Nowak</u> may not be extended to facts like those before us here, and they warn that doing so would effectively place any hotel that advertises on the internet at risk of being sued in any forum, anywhere in the country, where a guest is domiciled and books a reservation in response to that online marketing.

<u>Nowak</u> made clear, however, that the precise facts of that case do not necessarily define the outer limits of the circumstances in which a defendant's actions in the forum jurisdiction to cultivate a plaintiff's business may be said to be related to a resulting tort claim even though those actions did not proximately cause the tort. <u>See</u> <u>id.</u> at 716. It expressly stated that "[i]t may be that other kinds of fact patterns will be

found to meet the basic factor of foreseeability, but we have no occasion here to pronounce more broadly." Id.

In this case, the Marriott defendants' activity that provides the basis for the District Court's conclusion that the relatedness requirement has been met does not consist of their merely having posted an advertisement for the Canadian hotel on the internet for all the world to see. Instead, that activity, the District Court supportably found, see Nandjou, 2019 WL 2918043, at *2, *5, consists of the Marriott defendants deliberately having cultivated business from Nandjou and her family in Massachusetts by sending direct mail to her home in the Commonwealth that promoted the very hotel in which the drownings occurred and that even described that hotel's pool.

Nor is this a case in which such a direct in-forum-state attempt to cultivate the plaintiff's business played no role in the plaintiff's decision to enter into the business relationship that grounds her tort claims. The record suffices to provide support for Nandjou's claims that, through those materials, the Marriott defendants induced her family to stay at that hotel.

We thus conclude that, while the nature of the business cultivation in Massachusetts by the Marriott defendants differed from the nature of the business cultivation in the forum state by the defendants in Nowak, the District Court correctly held that, per Nowak, Marriott's contacts with Massachusetts were

- 31 -

sufficiently related to Nandjou's claims against the Marriott defendants to support the exercise of specific jurisdiction over them.  See Nandjou, 2019 WL 2918043, at *5-6.  As a result, there is no lack of personal jurisdiction over the Marriott defendants.

## c.

That brings us, then, to the question of whether there is personal jurisdiction over Reluxicorp.  In contending that there is not, Reluxicorp does not deny that, "[f]or purposes of personal jurisdiction, the actions of an agent may be attributed to the principal."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002).  It thus accepts that the Marriott defendants' contacts in Massachusetts could be imputed to it if those defendants were acting as its agents when engaged in those contacts.  But, Reluxicorp contends that, even still, there is no personal jurisdiction over it.

Reluxicorp argues that is the case in part because it contends that the Marriott defendants' contacts with Massachusetts through their marketing efforts were too attenuated from the alleged tortious conduct to support a finding of relatedness even as to the Marriott defendants.  But, as we have just explained, there is no force to that contention, and so, we must address Reluxicorp's additional assertion that the Marriott defendants' marketing activities in Massachusetts may not be attributed to it.

Here, Reluxicorp first contends that Nandjou has failed adequately to establish that the Marriott defendants were acting as Reluxicorp's agents in conducting the direct-mail marketing campaign which led them to send brochures to Nandjou's home in Massachusetts advertising the Montreal hotel and highlighting its pool. Reluxicorp does not contest Nandjou's assertion that the hotel had entered into a franchise agreement with the Marriott defendants that obligated Marriott to undertake marketing efforts on behalf of Reluxicorp in return for payment and which specifically identified those efforts as potentially including direct mail. Reluxicorp stresses instead that it did not dictate -- and did not have the contractual right to dictate -- any of the specifics of the marketing methods that the Marriott defendants would deploy. Thus, Reluxicorp contends, the Marriott defendants were not acting as Reluxicorp's agents in marketing the Montreal hotel to Nandjou's family as they did, because Reluxicorp lacked control over the marketing methods chosen by them.

As support for this assertion, Reluxicorp relies on Theos & Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113 (Mass. 2000), which holds that, under Massachusetts law, an agency relationship requires that "the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control." Id. at 1119. Reluxicorp's assertion on this score appears to depend on the implicit legal premise that Massachusetts

agency law is determinative in this case of whether an agency relationship exists for purposes of the inquiry that the Due Process Clause requires us to undertake in determining personal jurisdiction. Or, perhaps Reluxicorp means to contend that Theos & Sons may be understood to set forth a view of the law of agency that is widely shared.

But, even assuming that Theos & Sons is dispositive of whether, for purposes of personal jurisdiction, the Marriott defendants were Reluxicorp's agents in carrying out their Massachusetts-based marketing, Reluxicorp acknowledges that the minimum contacts of one defendant in a forum state can be attributed to another even if there is no actual agency relationship between them in place. In particular, it accepts that such imputation of those contacts can be proper under principles of agency by estoppel. See Daynard, 290 F.3d at 56-57. And Reluxicorp also accepts that, under those principles, a "person who is not otherwise liable as a party to a transaction purported to be done on his account[] is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if" either "he intentionally or carelessly caused such belief" or if he, "knowing of such belief and that others might change their positions because of it, . . . did not take reasonable steps to

notify them of the facts." Id. at 56 (quoting Restatement (Second) of Agency § 8(B) (1958)).

Thus, if Nandjou and her husband acted in reliance on the notion that the direct-mail campaign conducted by the Marriott defendants was undertaken by Reluxicorp, even if Reluxicorp did not specifically authorize it, that contact with Massachusetts potentially can be attributed to Reluxicorp for the purposes of evaluating whether personal jurisdiction exists over Reluxicorp in this suit. In other words, to show that the Marriott defendants' direct-mail-based contacts in Massachusetts are also Reluxicorp's, Nandjou need only demonstrate -- to the degree required under the prima facie standard -- that Reluxicorp either intentionally or carelessly led her and her husband to believe that it was responsible for the advertisements sent to their home promoting the hotel in Montreal or, at least, that it failed to take reasonable steps to correct their perception that it was.

As the District Court rightly determined, see Nandjou, 2019 WL 2918043, at *4, the record supportably shows that Nandjou and her husband reasonably understood the advertisements that they received at their home from the Marriott defendants to be a solicitation of their business from a Marriott-owned and Marriott-operated property in Montreal. See id. And, the record also suffices to show, they changed their position based on that perception -- Nandjou's husband made a reservation to stay there

at least in part because the couple determined from the brochures that the Montreal hotel "was an attractive Marriott hotel that [they] would like to visit, and that the hotel and its amenities, including its pool, were clean and safe."

Moreover, the record supportably shows, Reluxicorp's own conduct contributed to Nandjou and her husband's understanding. Reluxicorp held out its hotel in Montreal as being a Marriott property by identifying itself with the descriptor "The Residence Inn by Marriott" and through its use of Marriott branding and signage at its physical location. And Reluxicorp does not develop any argument that it did not know that its actions in that regard could lead prospective customers to believe that it was operated by Marriott or that it made any effort to ensure that the advertising that it contractually authorized the Marriott defendants to undertake on its behalf (which expressly was understood to include direct mailings) clarified that it was an independent entity. Indeed, so far as the record reveals, Reluxicorp benefited from affiliating itself with Marriott by virtue of the goodwill associated with that brand.

Reluxicorp does argue that Nandjou's family could not have believed that the marketing materials were sent on its behalf by Marriott because the family did not realize that Reluxicorp and Marriott were separate businesses. But, that fact, even if true, hardly helps Reluxicorp's position. The allegation that Nandjou

and her husband understood the Montreal hotel and Reluxicorp to be a single entity only reinforces our conclusion that the record supportably shows that the couple believed the advertising campaign was undertaken "by or for" the Montreal hotel and that Reluxicorp's own actions facilitated that understanding. See Daynard, 290 F.3d at 56 (quoting Restatement (Second) of Agency § 8(B) (1958)).

As a result, even if this case cannot properly be considered one in which Reluxicorp "intentionally . . . caused [the] belief" that it was entreating Nandjou and her husband to visit, Reluxicorp certainly "did not take reasonable steps" to disabuse the couple of that notion. See id. (quoting Restatement (Second) of Agency § 8(B) (1958)). We therefore conclude that Marriott's direct-mail efforts can properly be evaluated as Reluxicorp's own contacts with Massachusetts for the purpose of assessing personal jurisdiction.

Thus, we hold that the District Court properly concluded that the relatedness requirement was met as to Reluxicorp based on the Marriott defendants' direct-mail marketing of the Canadian hotel to Nandjou and her husband at their home in Massachusetts, just as we hold it properly concluded that requirement was met based on those same activities as to the Marriott defendants themselves. And, that being so, we conclude that there is no basis for reversing the District Court's finding of personal

jurisdiction over Reluxicorp, just as there is no basis for doing so as to its finding of personal jurisdiction over the Marriott defendants, as Reluxicorp offers no other reason that could supply a basis for our concluding otherwise.

**IV.**

We **affirm** the judgment of the District Court denying the defendants' motion to dismiss for lack of personal jurisdiction and we **reverse** the judgment of the District Court granting the defendants' motion to dismiss on forum non conveniens grounds. Each party shall bear their own costs."