# United States Court of Appeals
## For the First Circuit

No. 21-1702

MEDTRONIC MEDICAL CR SRL,

Plaintiff, Appellant,

v.

ELIESER FELICIANO-SOTO; INNOVATIVE ENGINEERING CORP.; INNOVATIVE
ENGINEERING, LLC; JOSÉ ENRIQUE SANTANA-CRIADO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Kayatta, Thompson, and Gelpí,
Circuit Judges.

Yaakov M. Roth, with whom Ana Maria Cristina Pérez Soto, Marco P. Basile, and Jones Day were on brief, for appellant.
Raúl S. Mariani Franco, with whom Mariani Franco Law, PSC was on brief, for appellee Elieser Feliciano-Soto.
Luis G. Rullán-Marín, with whom Law Offices of Luis G. Rullán, PSC was on brief, for appellees Innovative Engineering Corp., Innovative Engineering, LLC, and José Enrique Santana-Criado.

February 6, 2023

THOMPSON, **Circuit Judge**.  This appeal asks us to weigh in on the propriety of the district court's dismissal of the complaint filed below by Appellant, Medtronic Medical CR SRL ("Medtronic").  We write primarily for the parties, assuming their familiarity with the facts underlying Medtronic's complaint, the district court's reasoning in dismissing it based on the doctrine of forum non conveniens, the various appellate issues presented, and the assorted arguments made before us.  We'll lay out only the information and context necessary to explain our reasoning and the next steps dictated by that reasoning.  As we will explain, we remand this matter to the district court for further review consistent with this opinion.

Medtronic, a Costa Rica limited liability company, filed its suit under the Racketeering Influence and Corrupt Organizations Act ("RICO").  The case arises from what Medtronic says were fraudulent schemes orchestrated by Puerto Rico residents Elieser Feliciano-Soto ("Feliciano") and José Enrique Santana-Criado ("Santana," and, collectively, "Appellees").[1]  Appellees successfully moved to dismiss based on the doctrine of forum non

---

[1] There are other individuals named in the complaint, but our disposition of this appeal presently eliminates any need to consider the significance, if any, of that fact.  In addition, the Santana-and-Feliciano-operated Innovative Engineering Corp. and Innovative Engineering, LLC, alleged to be part of the enterprise that stole from and defrauded Medtronic, are named defendants and also appellees before us.

conveniens, urging that Costa Rica was an adequate alternative forum and the private and public interest factors to be considered weighed in favor of dismissal. Based on the facts as they stood at the time the motions to dismiss were before it, the district court concluded, inter alia: Costa Rica was an adequate alternative forum, Medtronic Med. CR SRL v. Soto, No. 20-1165, 2021 WL 4192105, at *11 (D.P.R. July 27, 2021); the private interest factors weighed in favor of Costa Rica as the forum since "all employees of Medtronic-CR -- except for [Feliciano and Santana] -- . . . appear to be Costa Rican nationals," id., the majority of events allegedly transpired in Costa Rica, id., and the district court would lack the ability to compel Costa Rican witnesses to appear for testimony, id. at *12-13; and the public interest factors likewise overall favored trial in Costa Rica, which "holds a more substantial interest in [Medtronic's] claims," id. at *14.

Medtronic timely appealed, persuasively arguing that the district court committed error in a handful of reversal-worthy ways. For example, as an overarching matter, Medtronic asseverates that the district court consistently misconstrued the burden that Appellees -- not Medtronic -- needed to carry. Medtronic urges that the district court never made the threshold finding that all defendants would be amenable to service in Costa Rica, instead concluding that only one had so represented, and that was a factor

- 4 -

that was "weight[ed]" in its analysis.  Id. at *10.  And, says Medtronic, the district court not only applied the wrong legal standard in assessing dismissal, but also misbalanced the private and public interest factors.  Appellees, of course, disagree with all of this.

In the normal course, our appellate task would be to assay the district court's reasoning and examine the parties' arguments against and in favor of that reasoning, seeing how all of it maps onto our precedent.  But an important and potentially game-changing event transpired in the wake of the district court's dismissal:  A grand jury in the District of Puerto Rico handed down a June 30, 2022 federal indictment of Feliciano and Santana on charges that arise from the same acts and events Medtronic's complaint alleges comprise the basis for its civil RICO claim.[2]

---

[2] Appellees protest Medtronic's mention of the indictment in its July 8, 2022 Fed. R. App. P. 28(j) submission.  They urge that Medtronic "abuse[d]" the Rule 28 process by impermissibly adding the indictment to the appellate record since it is not a "submission of 'pertinent and significant authorities.'"  Instead, it reflects only a grand jury's opinion and should thus be stricken from the appellate record.

Irrespective of whether Rule 28 permits a party to inform us of pertinent factual events, we may take judicial notice of this critical development because "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."  Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990); see also Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (same); United States v. Gordon, 634 F.2d 639, 642 (1st Cir. 1980) (observing that a district court could take judicial notice of a grand jury's federal indictment -- even one in another district).

Relatedly, we may also take judicial notice of the fact that

Specifically, the sealed indictment reflects that Feliciano and Santana have been indicted for violating federal criminal laws prohibiting conspiracy to commit wire fraud (18 U.S.C. § 1349) and money laundering conspiracies (18 U.S.C. § 1956(h)).

As a simple function of the timeline here, when the district court fielded the motions to dismiss and conducted its forum non conveniens analysis, the indictment didn't yet exist. We have no way of knowing how this intervening factual development, which necessarily shifts the landscape of this case in fundamental ways, would have impacted the district court's decision. Foundationally, it's possible the district court would have approached the motions to dismiss quite differently. Whether the District of Puerto Rico is in a better position to keep watch over all proceedings, both civil and criminal, is in the mix. Perhaps the district court would have stayed the civil case, alert to the effect of the criminal case on the civil (and/or vice versa).[3]

---

the criminal case docket reflects that both Feliciano and Santana have since been arrested and released on bail (with "standard conditions of release"), and their travel is restricted (Santana is permitted to travel only "between Puerto Rico and Florida in coordination with the U.S. Probation Office," and Feliciano, having surrendered his passport, is unable to leave Puerto Rico without getting permission from the district court).

We do not take notice of any of this, as Appellees worry, with an eye towards prejudging Appellees' civil or criminal culpability. We consider this information only inasmuch as it has bearing on what happens next, as we'll explain.

[3] We pause to observe that should Appellees be found culpable in the criminal action, that might have bearing on the civil action; so too might a civil recovery factor into a criminal

- 6 -

And, as things now stand, Puerto Rico is the forum for the criminal case against Appellees, who at this time are not permitted to journey beyond Puerto Rico (or, in Santana's case, Florida). Relative to all of this, we similarly cannot know how the shift in factual circumstances might have influenced specific arguments advanced by Medtronic or Appellees, whether before us or the district court.

The point is that the indictment changes things.[4] It's unclear to what extent and in what ways the district court's analysis would have been affected, but this much is clear: At this juncture, these intervening and developing circumstances have prompted us to pause and consider the most efficient, prudential path forward. Having done so, we decline to weigh in on the district court's analysis at this time.

Our case law teaches that a forum non conveniens examination -- probing whether "the chosen forum (despite the

restitution proceeding. See 18 U.S.C. §§ 3663, 3663A, 3664(j)(2)(A), 3664(l), 3664(m), 3771(6).

[4] It's worth noting the appeal of the civil case's dismissal is impacting the criminal case to some extent, too -- notations in the criminal case's docket reflect that the government and the defendants are grappling with issues that are somewhat bound up in the fate of the civil action. See United States v. Feliciano-Soto, et al., No. 3:22-cr-00291, ECF Nos. 28, 30 (indicating that the government awaits the defendants' responses to the plea offers extended and how the defendants would like to proceed, with defense counsel noting possible jurisdictional issues because of the civil case's appeal, confirming receipt of the plea offers, and indicating that the pending appeal means the defense "has to wait to see what happens in the civil case as it may affect this case").

presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place," Curtis v. Galakatos, 19 F.4th 41, 46 (1st Cir. 2021) (quoting Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 140 (1st Cir. 2021)) -- is a "multifaceted and fact-laden" undertaking, id. at 49. Movants must overcome the presumption favoring the plaintiff's chosen forum. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007). And assessing whether there's an adequate alternative forum (meaning, inter alia, all parties would come within its jurisdiction), Curtis, 19 F.4th at 47-48, balancing all of the private and public interest factors (a non-exhaustive list), determining whether the factors "favor litigating the claim in the second forum," id. (emphasis omitted) (quoting Nandjou, 985 F.3d at 142), and considering "[t]he 'ultimate inquiry'" of "where trial will best serve the convenience of the parties and the ends of justice," id. at 48-49 (quoting Imamura v. Gen. Elec. Co., 957 F.3d 98, 107 (1st Cir. 2020)), all require significant scrutiny of the facts.

Given the potentially sweeping impact of the indictment and ongoing criminal case, the district court should be afforded the opportunity to conduct anew the "fact-laden" forum non conveniens analysis, to reassess the disposition of this civil case with the benefit of these notable factual developments. And so, in light of everything we've observed to this point, and

- 8 -

mindful of the gravitas of abuse-of-discretion review, we conclude that the most prudent approach and the best way to honor our commitment to judicial efficiency is to remand to give the district court the opportunity to reassess the motions to dismiss. See, e.g., Madison Cnty. v. Oneida Indian Nation of N.Y., 562 U.S. 42, 43 (2011) (per curiam) (vacating and remanding to the Second Circuit so it could "address, in the first instance, whether to revisit its ruling on sovereign immunity in light of [a] new factual development"); Kiyemba v. Obama, 559 U.S. 131, 131 (2010) (per curiam) (vacating and remanding when the detainees seeking release into the United States had received at least one offer of resettlement in another country, constituting a "change in the underlying facts" that "may affect the legal issues presented").

Our familiarity with the legal arguments here compels us to offer a few parting thoughts before we go. While we offer no holding on any of the merits issues currently poised for our review, we observe our serious concerns about, for example, the existence and status of Appellees' agreement to submit to the jurisdiction of a Costa Rican court and the evaluation of Appellees' burden of demonstrating that the public and private interest factors favor litigation in Costa Rica. In any event, it strikes us as quite likely that the advent of the criminal case -- along with its attendant impacts on litigation of and proceedings in the civil case, as discussed above -- will play a

substantial role in the district court's reconsideration of the dismissal motions.

For the foregoing reasons, we <u>vacate</u> the district court's Opinion and Order and <u>remand</u> to the district court for further proceedings consistent with this opinion. Each side shall bear its own costs.