# United States Court of Appeals
## For the First Circuit

No. 22-1547

VIRGINIA CORA WARD, as the administratrix of the estate of
EDMUND EDWARD WARD,

Plaintiff, Appellant,

v.

ALPHACORE PHARMA, LLC and BRUCE AUERBACH,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Rikelman, Selya, and Howard,
Circuit Judges.

Timothy Cornell, with whom Cornell Dolan, P.C. was on brief,
for appellant.
John M. Allen, with whom McCarter & English LLP was on brief,
for appellee AlphaCore.
Mark S. Furman, with whom Emily C. Shanahan and Tarlow, Breed,
Hart & Rodgers, P.C. were on brief, for appellee Auerbach.

December 22, 2023

**SELYA**, **Circuit Judge**.  This appeal tests the margins of a court's in personam jurisdiction, consistent with the constraints of the Due Process Clause, see U.S. Const. amend. XIV, § 1, and the Massachusetts long-arm statute, see Mass. Gen. Laws ch. 223A, § 3.  Stripping away unsupported assertions, we uphold the district court's determination that the appellees, AlphaCore Pharma, LLC (ACP) and Bruce Auerbach, lacked sufficient contacts with the forum state to permit the exercise of in personam jurisdiction.[1]  Consequently, we affirm the district court's order of dismissal.

## I

We briefly rehearse the relevant facts and travel of the case.  In reviewing a dismissal of a case for lack of personal jurisdiction based on a prima facie record, we "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts" and accounting for "undisputed facts put forth by" the parties.  Baskin-Robbins

---

[1] Because the appellant's claims against ACP and Auerbach raise a discrete set of issues, we will resolve the appellant's claims against the remaining appellee in a separate and subsequent opinion.  See, e.g., Alston v. Town of Brookline, 997 F.3d 23, 29 n.1 (1st Cir. 2021); United States v. Santiago-Rivera, 744 F.3d 229, 231 n.1 (1st Cir. 2014).  Relatedly, we note that this opinion, which is based upon review of a prima facie record, does not contain the factual details that will appear in the subsequent opinion (which deals with claims based on a full trial record).

Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). Withal, we do not rely on any "unsupported allegations." Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 6 (1st Cir. 2018).

ACP is a limited liability company, which has its principal place of business in Ann Arbor, Michigan. In 2013, ACP was acquired by MedImmune, a subsidiary of AstraZeneca Biopharmaceuticals, Inc. (AstraZeneca). As of 2012, ACP was the sole patent licensee of a form of recombinant human lecithin-cholesterol acyltransferase known as ACP-501.

Auerbach is a citizen and resident of Michigan. He was a principal of ACP, as well as a corporate officer, until ACP was acquired by MedImmune.

The decedent, Edmund Edward Ward, was a citizen and resident of Massachusetts. Ward was born with an extremely rare genetic deficiency that inhibited him from being able to produce virtually any cholesterol. As a result, Ward eventually came to suffer from stage-5 kidney failure.

In 2012, Dr. Ernst Schaefer — Ward's treating physician in Massachusetts — introduced Ward to Auerbach and to Drs. Robert Shamburek and Alan Remaley as a potential candidate for ACP-501. Ward later agreed to participate as the only subject in a long-term trial of ACP-501. ACP donated the ACP-501 needed for the trial to the National Institutes of Health (NIH). Despite being diagnosed

as suffering from kidney failure, Ward postponed dialysis treatment in order to participate in the trial.

In January of 2013, Ward traveled from his home in Massachusetts to the NIH facility in Bethesda, Maryland, to begin treatment. During this initial visit, Ward met with Auerbach, who allegedly told him that the process would take a long time but urged him to undergo the full course of the treatment, explaining that "you will get out of it what you put into it." Auerbach allegedly boasted that ACP-501 was "most certainly the solution" to reverse Ward's kidney failure.

Until June of 2013, Ward traveled on a weekly basis from his home in Massachusetts to the NIH facility in Maryland to receive injections of ACP-501 and undergo testing (including multiple blood draws). Beginning in July and continuing through September of 2013, he journeyed every other week.

As part of the trial, NIH created a clinical protocol for Ward's treatment. ACP and Auerbach each had a hand in drafting this protocol, though the record lacks clarity as to the roles that they played. An early draft of the protocol dated November 20, 2012, provided that, during the first phase of the trial, Ward would receive ACP-501 injections at the NIH and then, during a second phase, would receive them in both Maryland and Massachusetts. The parties dispute whether this iteration of the protocol became the final operative draft or whether a different

- 4 -

draft, dated December 3, 2012, superseded it.  The later draft did not provide for any injections of ACP-501 in Massachusetts.[2]  In any event, the record makes manifest — and the appellant does not contest the fact — that all of the ACP-501 injections that Ward received were administered at the NIH facility in Maryland.

In September of 2013, Ward withdrew from the clinical trial.  His decision to end his participation came after he was informed that his kidney function was rapidly deteriorating and that he was in urgent need of dialysis.

We fast-forward to July of 2016.  At that time, Ward filed a complaint against ACP, Auerbach, Schaefer, Shamburek, Remaley, MedImmune, and AstraZeneca in a Massachusetts state court.  The complaint alleged that Ward had been fraudulently induced to participate in the clinical trial in order to set the table for a sale of ACP to MedImmune — a sale that was "based principally" on the results of his trial.  The complaint further alleged that "the individual defendants, acting in concert, were ACP shareholders, owned ACP options or warrants, or otherwise benefited materially from the sale of ACP to [MedImmune, an AstraZeneca subsidiary] in secret."

---

[2] It is undisputed that both drafts of the protocol stipulated that, during the periods in which Ward was at his home in Massachusetts, he would be monitored by Dr. Schaefer.

- 5 -

Ward's state-court action contained a gallimaufry of claims. One count sounded in fraud, another in lack of informed consent, and a third in unjust enrichment. Three other counts alleged an assortment of constitutional, civil rights, and conspiracy claims.

In short order, the case was removed to the United States District Court for the District of Massachusetts. See 28 U.S.C. § 2679(d)(2). As relevant here, ACP and Auerbach moved to dismiss their claims for want of in personam jurisdiction. See Fed. R. Civ. P. 12(b)(2). In support, Auerbach submitted two affidavits in which he attested that neither he nor ACP had any relevant contacts with the Commonwealth of Massachusetts. Nor had either of them — these affidavits declared — supplied any good or service within the state. Auerbach further attested that all of his and ACP's activities and communications concerning Ward — including ACP's involvement in helping the NIH prepare an investigational new drug application, ACP's donation of ACP-501 to the NIH, his two meetings with Ward at the NIH in January of 2013, and a brief telephone call with Ward in September of 2014 — occurred outside of Massachusetts. Ward neither submitted any counter-affidavits nor otherwise refuted Auerbach's representations.

The district court granted ACP's and Auerbach's joint motion to dismiss over Ward's objection. See Ward v. Auerbach, No. 16-12543, 2017 WL 2724938, at *13 (D. Mass. June 23, 2017).

- 6 -

First, the court concluded that neither ACP nor Auerbach was subject to personal jurisdiction in Massachusetts premised on "their own in-forum contacts." Id. at *10. Next, the court determined that neither ACP nor Auerbach "regularly transacted or solicited business, or engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in Massachusetts." Id. The court further determined that neither ACP nor Auerbach caused tortious injury through any alleged act or omission in Massachusetts. See id. And finally, the court rejected as unsubstantiated joint-venture and conspiracy theories promulgated by Ward. See id. at *10-13.

After the court entered the order dismissing the case as to ACP and Auerbach, Ward moved to reconsider. He reiterated his claim that the district court had personal jurisdiction over ACP and Auerbach because those defendants had "purposeful, specific, and directed contacts" with Massachusetts. He alleged for the first time — in a lawyer's memorandum — that ACP and Auerbach supplied "a steady stream of ACP-501 to . . . [him] both in Maryland and in Massachusetts" and provided "consulting services [to] the medical teams in both Massachusetts and Maryland." Ward also newly alleged that ACP and Auerbach availed themselves of Massachusetts when they "deployed Massachusetts medical facilities as injection and monitoring sites for ACP-501, and thus, necessarily relied on the involvement and supervision of

- 7 -

Massachusetts medical personnel as well as the utilization of Massachusetts medical expertise and facilities." Unmoved by these allegations, the district court denied the motion for reconsideration.

Not all of the defendants succeeded in obtaining pretrial relief. The last remaining defendant was Dr. Schaefer, and the jury rendered a take-nothing verdict in his favor. This timely appeal followed.[3]

**II**

It is apodictic that the burden of proving that personal jurisdiction may be exercised in the forum state rests with the party seeking to invoke that jurisdiction. See Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022). The jurisdictional determination in this case was made at the inception of the litigation, without the benefit of either pretrial discovery or an evidentiary hearing. Thus, the familiar prima facie approach holds sway. See Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995); Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

"Where, as here, a district court dismisses a case for lack of personal jurisdiction based on the prima facie record,

---

[3] Ward died during the pendency of this appeal. Virginia Cora Ward, who is his sister and the administratrix of his estate, has been substituted in his place and stead. See Fed. R. App. P. 43(a). We refer to her throughout as the appellant.

rather than after an evidentiary hearing or factual findings, our review is de novo." Baskin-Robbins, 825 F.3d at 34 (quoting C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)). We are not bound by the district court's reasoning, though, and we are free to uphold the judgment on any ground supported by the record. See id.

Under the prima facie approach, an inquiring court "ask[s] only whether the plaintiff has proffered facts that, if credited, would support all findings 'essential to personal jurisdiction.'" Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 51 (1st Cir. 2020) (quoting Foster-Miller, 46 F.3d at 145). We draw the relevant facts from "the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Baskin-Robbins, 825 F.3d at 34. Even so, we do not "credit conclusory allegations or draw farfetched inferences." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Instead, the inquiry must be governed by "evidence of specific facts set forth in the record" — not simply predicated upon a plaintiff's "unsupported allegations in their pleadings." Boit, 967 F.2d at 675. Ordinarily, such evidence will be contained in affidavits, authenticated documents, and the like, submitted by one or more of the parties. See Ticketmaster-N.Y., 26 F.3d at 203.

The appellant must show that our exercise of jurisdiction over the defendants satisfies both the requirements of the Due Process Clause, see U.S. Const. amend. XIV, § 1, and the strictures of the Massachusetts long-arm statute, see Mass. Gen. Laws ch. 223A, § 3. Even though the reach of the Massachusetts statute is not congruent with the reach of the Due Process Clause, see Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), we do not need to inquire into any such distinctions here: the appellant's attempted assertion of jurisdiction over ACP and Auerbach plainly does not satisfy even the constitutional minimum required by the Due Process Clause, see A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 59 (1st Cir. 2016).

Under the Due Process Clause, a court may exercise either general or specific in personam jurisdiction over an out-of-state defendant only if that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). A state holds general jurisdiction over a defendant when the defendant maintains contacts that are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe, 326 U.S. at 317). The appellant has

- 10 -

not proffered a claim of general jurisdiction regarding either ACP or Auerbach and, thus, any such claim has been waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

To fill this jurisdictional void, the appellant has advanced a singular claim of specific jurisdiction. A litigant seeking to establish that a court has specific jurisdiction over a defendant must satisfy three criteria. "First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum." Chen, 956 F.3d at 59. "Second, the defendant's forum-state contacts must 'represent a purposeful availment of the privilege of conducting activities in that state.'" Id. (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018)). Third, "the exercise of specific jurisdiction in the forum must be reasonable under the circumstances." Id. All three criteria must be satisfied to establish specific jurisdiction. See id.

**III**

With this framework in place, we turn to the particulars of the case at hand. The appellant argues that ACP and Auerbach had sufficient related and purposeful contacts in and with Massachusetts to satisfy the criteria needed for a finding of specific jurisdiction. In support, she identifies four alleged points of contact:

- that ACP and Auerbach "contacted Dr. Schaefer in the state."

- that they "sent drugs to the state."

- that they "oversaw the NIH protocol that delivered the drug to Mr. Ward" and, in the process, "obtained data and communications from the state regarding Mr. Ward's condition."

- that they reimbursed Ward "for travel to and from the state."

In the appellant's view, these points of contact afford "ample grounds for personal jurisdiction."

We do not agree. On this nearly empty record, it is luminously clear that neither ACP nor Auerbach may be subjected to personal jurisdiction in Massachusetts. We explain briefly.

To begin, we do not take into consideration the appellant's unsupported claim that ACP and Auerbach reimbursed Ward for his travel between Massachusetts and Maryland. This claim is not part of Ward's complaint; it appears for the first time in his lawyer's memorandum opposing the motion to dismiss.[4] Such a source is insufficient to bring the allegation into the

_____

[4] The lawyer's memorandum does contain an attachment, in the form of an email from Dr. Schaefer to Auerbach. That email, however, merely discusses travel expenses and goes on to say "if you could reimburse us that would be great." It is unclear from this email who "us" is, and the appellant offers no clarification.

jurisdictional calculus. After all, "allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001); cf. Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991) (explaining that "mere allegations in, say, an unverified complaint or lawyer's brief" are insufficient to fend off summary judgment).

The appellant's remaining allegations fare no better. The prima facie approach does not require us to "credit conclusory allegations or draw farfetched inferences." Ticketmaster-N.Y., 26 F.3d at 203. Yet, this is precisely what the appellant asks us to do: the three remaining data points on which she relies comprise a hodge-podge of conclusory and unsupported allegations.

We offer an example. On appeal, the appellant contends that ACP and Auerbach contacted Dr. Schaefer in Massachusetts. But in the complaint, there is no inkling that this contact occurred in Massachusetts. What is more, Auerbach's affidavits reveal that it was Dr. Schaefer who initiated contact with Auerbach about Ward and the potential use of ACP-501 in a clinical trial. Taken together, these facts defenestrate any claim that ACP and Auerbach purposefully availed themselves of Massachusetts by initiating contact with Dr. Schaefer. See Walden v. Fiore, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of

- 13 -

contacts that the 'defendant _himself_' creates with the forum State." (emphasis in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985))).

Similarly, the appellant's allegation that ACP and Auerbach sent ACP-501 to Massachusetts does not withstand scrutiny. This allegation appears for the first time in the appellant's motion for reconsideration — and "it is settled beyond hope of contradiction that, at least in the absence of exceptional circumstances, a party may not advance new arguments in a motion for reconsideration when such arguments could and should have been advanced at an earlier stage of the litigation." Caribbean Mgmt. Grp., Inc. v. Erikon LLC, 966 F.3d 35, 45 (1st Cir. 2020). So it is here: this allegation could easily have been made at the inception of the case, and the appellant has made no showing of exceptional circumstances. It follows that we cannot credit the belated claim that ACP and Auerbach sent ACP-501 to Massachusetts.

Here, moreover, Ward's complaint and Auerbach's affidavits make it pellucid that this claim simply is not true: neither he nor ACP ever sent ACP-501 to Massachusetts, and Ward was never injected with ACP-501 in that state. The only supplies of ACP-501 that the defendants shipped went to Maryland.

We add that there is no evidence that ACP or Auerbach oversaw the NIH clinical trial or that either of them obtained data from Massachusetts regarding Ward's condition. Although ACP

- 14 -

and Auerbach may have played indeterminate roles in drafting the clinical protocol, all of the available evidence indicates that it was Drs. Shamburek and Remaley who headed the trial — and they did so from Maryland.

To sum up, the appellant appears to have brought her suit against ACP and Auerbach on a wing and a prayer. The evidence of record is scant, especially since the appellant has not buttressed her filings with any affidavits, sworn statements, documentary proof, requests for admission, or the like. She has not even made a request for jurisdictional discovery. Cf. Motus, 23 F.4th at 127-28.

That ends this aspect of the matter. The appellant has made an argument that requires red meat and strong drink — but she has supported it only with the thinnest of gruel. Taking what few facts have been established as a whole and viewing those facts in the light most congenial to the appellant, see Boit, 967 F.2d at 675, we discern no basis for concluding that either ACP or Auerbach conducted activities that were sufficiently related to Massachusetts to satisfy the strictures of the Due Process Clause, see Chen, 956 F.3d at 59.[5]

---

[5] As noted above, the district court entertained and rejected joint-venture and conspiracy theories in furtherance of the appellant's claim of personal jurisdiction over ACP and Auerbach. See Ward, 2017 WL 2724938, at *10-13. Because the appellant fails to develop arguments on appeal in support of either theory, we deem them waived. See Zannino, 895 F.2d at 17.

**IV**

We need go no further.  For the reasons elucidated above, the judgment of the district court, in so far as it concerns the claims asserted against ACP and Auerbach, is


**Affirmed**.