# United States Court of Appeals
## For the First Circuit

No. 25-1857

ELIZABETH PUTNAM; CALE PUTNAM,

Plaintiffs, Appellants,

v.

EPR PROPERTIES; PREMIER PARKS, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Margaret R. Guzman, U.S. District Judge]

Before

Aframe, Howard, and Dunlap,
Circuit Judges.

Benjamin R. Zimmermann, with whom Stacey L. Pietrowicz, Sarah Yun, and Sugarman & Sugarman, P.C., were on brief, for appellants.

Peter L. Bosse, with whom Karli J. Grant and Boyle Shaughnessy Law P.C. were on brief, for appellee EPR Properties.

William J. Brennan, with whom Kennedys CMK LLP was on brief, for appellee Premier Parks, LLC.

April 28, 2026

**DUNLAP**, <u>Circuit Judge</u>. Plaintiffs-Appellants Elizabeth and Cale Putnam ("Plaintiffs") are bereaved parents whose five-year old son, Anthony, died after an unsecured Murphy bed fell on him in their room at the Hotel Valcartier in Québec, Canada, where the family was vacationing. Seeking redress for the alleged wrongful death of their son, Plaintiffs sued Defendants-Appellees Premier Parks, LLC ("Premier") and EPR Properties ("EPR") (together, "Defendants"), who they believed -- based on public information -- operated and owned the Hotel Valcartier, respectively. Premier and EPR each moved to dismiss Plaintiffs' suit for lack of personal jurisdiction, based on sworn statements denying that Premier or EPR owned, operated, advertised, or booked rooms for the Hotel Valcartier. Despite Plaintiffs' submission of documents linking Defendants to the ownership and management of the Hotel Valcartier, the district court dismissed Plaintiffs' complaint with prejudice and denied Plaintiffs any jurisdictional discovery. Following our review of the record on appeal, we affirm in part and reverse in part.

## I.

At all relevant times, Plaintiffs were citizens of Massachusetts. Premier is a limited liability company that operates amusement and water parks in several states, not including Massachusetts. Incorporated in Delaware, Premier has its

headquarters in Oklahoma. EPR is a real estate investment trust incorporated in Maryland and headquartered in Missouri.

From 2022 to 2024, Elizabeth Putnam saw advertisements and content related to the Ice Hotel on the Hotel Valcartier property in Québec, Canada. Sometime in late 2022 or early 2023, she received an issue of Yankee Magazine -- a publication targeting New England audiences -- that included an article featuring the Ice Hotel. In October 2022, she sent an email to info@valcartier.com inquiring about when and how she could book a room at the Ice Hotel. In April 2023, she booked a room at the Ice Hotel for January 14, 2024, via valcartier.com. The booking also included a room at the Hotel Valcartier on the same night so Plaintiffs could shower and store their luggage. The hotel emailed Elizabeth Putnam a receipt that included her Massachusetts mailing address. Thereafter, Elizabeth began receiving regular marketing emails from the hotel. She also revised her hotel reservation via email to add an extra night, received direct marketing emails throughout the year, and later booked an activity at the hotel's spa and added yet another night to her family's reservation. The hotel again billed her using her Massachusetts address. The marketing communications, emails, receipts, and invoices that Elizabeth received listed "Village Vacances Valcartier" as the sender. On January 12, 2024, Plaintiffs arrived at the hotel with their son, where they noticed multiple

Massachusetts vehicles in the hotel parking lot. Shortly after the family arrived at the hotel, an unsecured Murphy bed fell on Anthony and caused catastrophic head injuries that led to his death later that night.

In October 2024, Plaintiffs brought a wrongful death suit against Premier and EPR -- who they alleged were the operator and owner of the Hotel Valcartier, respectively -- in the federal district court for the District of Massachusetts, invoking diversity jurisdiction. Plaintiffs alleged that Premier operated the Hotel Valcartier, that EPR gave Premier possession and control of the hotel property through a triple-net lease, and that Premier and EPR knew or should have known that the Murphy bed that killed Anthony had inadequate mechanisms for preventing its accidental rapid descent to the floor. They further alleged that Premier and EPR "regularly, continuously, and systematically market . . . the Hotel Valcartier . . . to residents of Massachusetts," and "solicit business from" and "contract with Massachusetts residents." In particular, they alleged that their "cause of action ar[ose] from [Premier and EPR's] transaction of business in Massachusetts, namely their marketing to and contracting with the plaintiffs in Massachusetts for the rental of rooms at Hotel Valcartier, and the provision of [related] services." Each defendant moved to dismiss the suit for lack of personal jurisdiction.

- 4 -

With its motion, EPR submitted an affidavit from its director of asset management, Bob Stanion, who asserted that "EPR does not own the Hotel Valcartier," but "has direct and indirect ownership interests in various subsidiary entities" that "own various properties in the United States and Canada." He further stated that one of those subsidiaries, Valcartier Property LP, owned "[t]he property on which the Hotel Valcartier sits" and "entered into a triple-net lease agreement dated June 10, 2022" -- to which EPR "is not a party" -- "with Village Vacances Valcartier Inc." Under this lease agreement, Stanion stated, "Valcartier Property LP has no involvement in the operation, maintenance, or business activities of the Hotel Valcartier" and only "own[s] the property and collect[s] fixed rent from its tenant." He averred that "[n]either EPR nor its subsidiaries . . . direct, coordinate, control, or otherwise have any involvement in any marketing or advertising of the Hotel Valcartier in the Commonwealth of Massachusetts or anywhere else," "solicit business directly from consumers such as the Plaintiffs," "have any direct communications with consumers regarding the Hotel Valcartier," or operate or maintain the hotel's website or social media accounts.[1]

---

[1] Plaintiffs have not attempted to add Valcartier Property LP as a defendant in this suit.

In support of its motion to dismiss, Premier submitted a declaration by its Chief Financial Officer, Jessica Cerbo. Cerbo declared that Premier does not advertise in Massachusetts, nor market to or contract with Massachusetts residents, including for services or rooms at the Hotel Valcartier. She further declared that "Premier Parks is not involved in travel bookings" and "did not solicit, market or transact any business in Massachusetts and/or with the Plaintiffs," but she did not expressly state that Premier did not operate the hotel.

Plaintiffs opposed both motions to dismiss. In support, they submitted an affidavit from Elizabeth Putnam explaining her above-described contacts with the Hotel Valcartier. Accompanying her affidavit, Elizabeth provided several exhibits showing her email exchanges with the hotel, the receipts for her room and service bookings, and marketing emails she received from the hotel. In addition, Plaintiffs submitted publicly available documents that they argued linked Premier and EPR to the Hotel Valcartier. The most relevant of those documents included:

- A company statement from EPR's website from June 2, 2022, titled "EPR Properties Announces $142 Million Acquisition of the Village Vacances Valcartier and Calypso Properties," which indicated that "EPR Properties . . . announced that it is acquiring the Village Vacances Valcartier resort and hotel in Québec City, Québec" and "[s]imultaneous with the acquisition, the Company is leasing these properties to Premier Parks pursuant to a long-term triple net lease." The statement includes a quote from EPR's Chairman and CEO, Gregory Silvers, indicating, "We are delighted to announce

- 6 -

the acquisition of two of the top performing attractions in Canada."

- An excerpt of EPR's 10-K filing from 2023,[2] which notes that EPR "owned properties . . . in . . . the Canadian provinces of Ontario and Québec," and that, in Québec, it owned 399,437 gross square feet of "building" from which it made approximately $9.4 million in rental revenue for the year that ended on December 31, 2023.

- Screenshots of an undated map and list of EPR's real estate portfolio on EPR's website, which features "Village Vacances Valcartier Resort and Hotel" as part of EPR's portfolio and lists the resort and hotel's "[o]perator" as "Premier Parks."

- A statement posted on Premier's website on June 21, 2022, titled "Calypso-Valcartier Group Resort and Water Parks Joins Premier Parks, LLC," which states that the "Calypso-Valcartier . . . resort company welcomes a new property owner -- EPR Properties, and new management -- Premier Parks, LLC." The statement features a quote from Premier's CEO, Kieran Burke, stating that it was "a very exciting time to welcome . . . Village Vacances Valcartier to our family of parks." It further indicates that "Calypso-Valcartier Group, now part of the Premier Parks family includes" the "Village Vacances Valcartier . . . dynamic tourist and leisure complex," as well as the "Hotel Valcartier" and "Hôtel de Glace" (Ice Hotel).

- The public filing for "Valcartier Holiday Village, SRI" (the anglicized version of Village Vacances Valcartier, SRI ("VVV")) in the Business Register of Québec, listing "Kieran E. Burke" -- Premier's CEO -- as the Chief Executive Officer and Chairman of the Board for that entity and the "ultimate beneficiary" with "more than 75% of the voting rights."

- A LinkedIn post for Premier sharing the Valcartier acquisition, announcing that Premier was "[d]elighted to

---

[2] In its brief on appeal, EPR points out that in another section of its 10-K filing, which Plaintiffs did not include in their exhibit, it stated: "Substantially all of our assets are held through our subsidiaries," which "are separate and distinct legal entities and have no obligations . . . to make funds available to [EPR]."

welcome Sylvain Lauzon and the talented professionals at Calypso-Valcartier Group to the Premier Parks family."

- A Glassdoor job posting, published by Premier on October 22, 2024, stating: "We are looking for passionate people to join our team at the Aroma Spa located in the Village Vacances Valcartier hotel" and to "[r]epresent the VVV in its activities and ensure complete customer satisfaction." It directs would-be applicants to apply at rh@valcartier.com.

- A screenshot of Premier's website, with the header "The Largest Independent Operator of Parks In North America" and subtitle "Actively seeking to acquire, lease and manage theme parks, water parks, and visitor attractions throughout North America." On the screenshot, the subtitle is immediately followed by logos of various parks and hotels, including the Valcartier logo.

Defendants filed replies, and Premier submitted a new declaration from Burke stating that Premier "has never owned, operated, or managed Hotel Valcartier," "contracted or arranged for the rental of rooms or services at Hotel Valcartier," "marketed . . . to potential customers for room rentals or services at Hotel Valcartier," or had "any employees working at Hotel Valcartier," "including on or around January 12, 2024," the date of Anthony Putnam's death. Burke further declared that these operational, managerial, and advertising services were all handled by another entity, VVV, whose parent company is CV Operations, LP.[3] Burke's affidavit did not explain how VVV or CV Operations,

---

[3] Plaintiffs pointed to a discrepancy in the Premier and EPR affidavits, which refer to this entity as Village Vacances Valcartier, SRI and Village Vacances Valcartier, Inc., respectively, but Premier and EPR have explained that this is the same entity, which underwent a name change. We are not persuaded that this discrepancy, which Defendants have clarified, creates a

LP are related to Premier, or how Burke had personal knowledge of either of those entities' operations; however, Plaintiffs' documentary support shows that Burke is the CEO of both Premier and VVV.[4]

In July 2025, the district court heard argument on the motions, and on August 29, 2025, it dismissed all claims with prejudice and denied Plaintiffs' request for jurisdictional discovery. This appeal followed.

## II.

### A. Standard of Review

We review the district court's dismissal for lack of personal jurisdiction de novo. Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 160 (1st Cir. 2022). Because "[t]he jurisdictional determination in this case was made at the inception of the litigation," we utilize the "prima facie approach," under which we ask "whether the plaintiff[s] ha[ve] proffered facts that, if credited, would support all findings essential to personal jurisdiction." Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 208–09 (1st Cir. 2023) (quoting Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 51 (1st Cir. 2020) (internal

genuine conflict over jurisdictional facts or alters our analysis of the declarations and affidavit.

[4] Plaintiffs have not attempted to add VVV or CV Operations, LP as defendants in their lawsuit.

quotations omitted)). "[P]laintiff[s] cannot rely solely on conclusory averments but must 'adduce evidence of specific facts.'" Chen, 956 F.3d at 54 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)). We draw the relevant facts from the pleadings as well as the supplemental filings in the record. Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 123 (1st Cir. 2022). Plaintiffs bear the burden of proffering sufficient evidence to establish that the district court has personal jurisdiction over Premier and EPR. See LP Sols. LLC v. Duchossois, 907 F.3d 95, 102 (1st Cir. 2018).

Under the prima facie approach, we "accept the plaintiff[s'] properly documented evidentiary proffers as true and give 'credence to the plaintiff[s'] version of genuinely contested facts.'" Chen, 956 F.3d at 54 (quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016)). We also, however, consider "undisputed jurisdictional facts" proffered by the defendants. Id. at 56 (emphasis added). Defendants may introduce such facts via affidavits by persons with "adequate knowledge of the situation." Id. It is worth emphasizing that the facts which the defendants put forward "become part of the mix only to the extent that they are uncontradicted," whereas we "must accept the plaintiff[s'] (properly documented) evidentiary proffers as true" regardless of "whether the

- 10 -

defendant[s] dispute[] them, and . . . 'construe them in the light most congenial to the plaintiff[s'] jurisdictional claim.'" Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (first quoting Foster-Miller, 46 F.3d at 145; and then quoting Mass Sch. of L. at Andover, Inc. v. A.B.A., 142 F.3d 26, 34 (1st Cir. 1998)).

We review the lower court's decision to deny jurisdictional discovery for abuse of discretion, a "deferential" standard under which we will overturn an order "'only upon a clear showing' that 'the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" Motus, 23 F.4th at 128 (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001)).

## B. Personal Jurisdiction

To evaluate whether the district court, sitting in Massachusetts, may exercise personal jurisdiction over Premier and EPR, we must look to both the U.S. Constitution and the Massachusetts long-arm statute. Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 148 (1st Cir. 2021). Under the Due Process Clause, a federal court sitting in Massachusetts may only exercise jurisdiction over out-of-state defendants like Premier and EPR if they have "sufficient minimum contacts" with Massachusetts, "such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Adelson, 510 F.3d at 49 (internal quotations omitted)). Consistent with

- 11 -

due process, a court may exercise specific jurisdiction over an out-of-state defendant if the case "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Chen, 956 F.3d at 55 (quoting Baskin-Robbins, 825 F.3d at 35).[5] Similarly, under the subsection of the Massachusetts long-arm statute on which Plaintiffs base their argument, a court may exercise jurisdiction if Plaintiffs demonstrate that their cause of action "aris[es] from" Premier and EPR's "transacting any business in [the] commonwealth" of Massachusetts. Mass. Gen. Laws ch. 223A, § 3(a); see Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994).

Plaintiffs' theory is that the district court had personal jurisdiction over Premier and EPR because Defendants regularly market in Massachusetts and accept hotel reservations from Massachusetts residents, and they did so in communicating with Plaintiffs regarding Plaintiffs' reservation at the Hotel Valcartier. To support this theory, Plaintiffs cite a line of cases in which courts have exercised personal jurisdiction over out-of-state hotel companies that marketed to Massachusetts

---

[5] To establish specific jurisdiction, "for each claim and each defendant," Plaintiffs "must make a tripartite showing: that the claim is sufficiently related to the [D]efendant[s'] contacts with Massachusetts, that [those] contacts with Massachusetts constitute purposeful availment of the protections and privileges of conducting business in the Commonwealth, and that the exercise of jurisdiction there is reasonable." Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 148 (1st Cir. 2021).

residents or booked rooms for Massachusetts residents. See Nandjou, 985 F.3d at 150; Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 62-69 (D. Mass. 2001). Under these cases, if Premier and EPR marketed the Hotel Valcartier to, or booked rooms at the hotel for, Massachusetts residents like Plaintiffs, Anthony Putnam's wrongful death could plausibly have arisen from Premier and EPR's transacting business in Massachusetts.

Plaintiffs alleged such activities by Premier and EPR in their complaint, but they did so in a conclusory fashion, which does not suffice to show personal jurisdiction under the prima facie standard. See Ward, 89 F.4th at 209; Chen, 956 F.3d at 54. Accordingly, we must determine whether Plaintiffs' proffers of "evidence of specific facts . . . beyond the pleadings" affirmatively prove their allegations, Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)) (emphasis added), and whether Plaintiffs' factual proffers genuinely conflict with the jurisdictional facts that Premier and EPR have articulated in their affidavit and declarations, see Chen, 956 F.3d at 54. If so, we must credit Plaintiffs' version of those facts and reverse the dismissal for lack of personal jurisdiction; if not, we must credit Defendants' facts and affirm the dismissal.

- 13 -

See id. at 54, 56; Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 907 (1st Cir. 1980).

### 1. Plaintiffs' Affidavit and Attached Exhibits

Beginning with Elizabeth Putnam's affidavit and related exhibits, we conclude that Plaintiffs fail to directly contradict the jurisdictional facts set forth in Premier and EPR's sworn statements. While they link the Hotel Valcartier to "Village Vacances Valcartier" -- which could be the full name of the resort or an abbreviated reference to the VVV entity -- they do nothing to show that Premier and EPR were involved in the hotel's advertising and room booking efforts that were directed toward Massachusetts residents.

The affidavit itself does not mention Premier or EPR at all -- let alone indicate that Plaintiffs ever contracted with them, that either Premier or EPR advertises and solicits business for the Hotel Valcartier from Massachusetts residents, or that either Premier or EPR owns or operates the hotel. Rather, Elizabeth Putnam merely attests that she contacted the hotel at "info@valcartier.com" and "the Valcartier.com web address," and received "regular mailings from the Hotel Valcartier," including "marketing emails . . . from Hotel Valcartier." These statements certainly link the hotel to Massachusetts; but, critically, they do not link Premier or EPR to the hotel.

- 14 -

Likewise, the exhibits attached to the affidavit -- including Elizabeth Putnam's emails with the hotel, receipts, and marketing communications -- do not contradict Defendants' sworn statements that Valcartier Property LP (not EPR) owns the land and leases it to VVV, that VVV (not Premier) operates the hotel, and that VVV handles the hotel's advertising and booking. The hotel's emails to Elizabeth Putnam are all from "Valcartier" email domains that could as readily be attributed to Valcartier Property LP or VVV as to Premier or EPR. Likewise, Elizabeth Putnam's receipts list the address of the hotel and the name "Village Vacances Valcartier"; these receipts thus create no conflict with Defendants' sworn statements that VVV operates the hotel and handles its marketing and bookings. Further, the advertisements Elizabeth Putnam alleges seeing online and in Yankee Magazine discuss the hotel but do not mention Premier or EPR.

## 2. Plaintiffs' Additional Documents

Because Plaintiffs' affidavit and attached exhibits do not create a genuine dispute with Defendants' submissions, the only evidence by which Plaintiffs may have "genuinely contested" Defendants' jurisdictional facts consists of their separate, unauthenticated exhibits. Chen, 956 F.3d at 54 (quoting Baskin-Robbins, 825 F.3d at 34). We analyze whether those exhibits contradict each defendant's factual proffers in turn.

We must first, however, determine whether Plaintiffs' unsworn documentary evidence that is not accompanied by an authenticating affidavit can be considered for purposes of this jurisdictional analysis. Premier has repeatedly stressed, below and on appeal, that Plaintiffs' documents are unauthenticated and therefore "irrelevant" and "improper."[6] We are not persuaded that the unauthenticated nature of the documents means that we must necessarily disregard them.

In Ward, we observed that the inquiry into whether a plaintiff has made a prima facie showing of personal jurisdiction "must be governed by 'evidence of specific facts set forth in the record,'" which will "[o]rdinarily . . . be contained in affidavits, authenticated documents, and the like." 89 F.4th at 209 (emphases added) (quoting Boit, 967 F.2d at 675).[7] In observing that relevant evidence is "ordinarily" set out in affidavits or authenticated documents and acknowledging that other documents may also be considered, we left the door open to considering documents that are not authenticated -- and wisely so. Authentication

_____

[6] EPR has not presented a similar argument before our court.

[7] Other courts have similarly stated that written materials can suffice for plaintiffs' prima facie showing that jurisdiction exists, without specifying that they must be authenticated. See, e.g., Dental Dynamics, LLC v. Jolly Dental Grp., LLC, 946 F.3d 1223, 1228 (10th Cir. 2020) (noting that a plaintiff may "make a prima facie showing of personal jurisdiction . . . through affidavits or other written materials," without discussing authentication (emphasis added)).

- 16 -

issues are not easily or fairly resolved at the motion-to-dismiss stage, see Six v. Generations Fed. Credit Union, 891 F.3d 508, 512-13 (4th Cir. 2018) (noting that challenges to authentication are "untenable at the motion to dismiss stage"), and plaintiffs may often lack the ability to fully authenticate documents prior to discovery.

In this case, Plaintiffs attached relevant documents to their response to the motions to dismiss, and Premier did not seek to strike them. Premier has not provided any reason to find the documents unreliable. Further, when asked at oral argument whether Premier denied the accuracy and authenticity of the documents, Premier's counsel said no.

Under these circumstances, and where Plaintiffs have not yet been able to conduct discovery, we conclude that it was permissible for Plaintiffs to rely on publicly available documents. See generally Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001) (noting propriety of considering documents, the authenticity of which are not disputed, on a Rule 12(b)(6) motion). We have adopted a "practical, commonsense approach" to considering unauthenticated documents outside the pleadings that are submitted with a Rule 12(b)(6) motion to dismiss. Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 16-17 (1st Cir. 1998)). Because we are allowed to "take[]" Plaintiffs' evidentiary proffers "at face value" under

the prima facie standard, Baskin-Robbins, 825 F.3d at 34, it is fully appropriate that this "commonsense approach" also applies in the Rule 12(b)(2) context. Accordingly, we will review the entire record for facts relevant to personal jurisdiction. See Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 94 (1st Cir. 2024) (explaining that we "mine the relevant facts" from "whatever supplemental filings . . . are contained in the record" (quoting Baskin-Robbins, 825 F.3d at 34) (emphasis added)).

### a. Premier

We begin with Premier and conclude that Plaintiffs have sufficiently contested Premier's declarations to make out a colorable case for personal jurisdiction and justify jurisdictional discovery. Plaintiffs' submissions, when viewed together with Burke's declaration, persuade us that there is a genuine conflict in the parties' evidentiary proffers on jurisdiction. See Chen, 956 F.3d at 54; Adelson, 510 F.3d at 48.

Plaintiffs' exhibits relating to whether Premier operates the hotel and handles the hotel's advertising and room bookings on their face suggest that Premier is involved in the operation of the hotel. Premier's LinkedIn post welcoming the "talented professionals at Calypso-Valcartier Group to the Premier Parks family," along with the job listing in which Premier advertised for a spa receptionist to join "our team" at the hotel spa, apparently conflict with Premier's declaration that it never

- 18 -

had "any employees working at Hotel Valcartier." Moreover, EPR's company statement indicating the hotel property was being leased "to Premier Parks," together with Premier's statement that Calypso-Valcartier Group had "new management -- Premier Parks," the Valcartier logo on Premier's own website following Premier's description of itself as "The Largest Independent Operator of Parks in North America," and EPR's listing of Premier as the hotel operator on its website, create a genuine conflict with Premier's declaration that it "has never operated or managed Hotel Valcartier." These statements suggest that Premier is in fact involved in hotel operations -- including, potentially, with respect to advertising the Hotel Valcartier to and booking rooms for Massachusetts residents.

Rather than clearly refuting this inference, the declaration Premier submitted in fact suggests that there may be a confused intermingling of operations between Premier and VVV. In Sigros, the court observed that

> affiliated corporations can be presumed to function as agents of one another when "there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting."

129 F. Supp 2d at 64 (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968)). In his

- 19 -

declaration, Burke -- who is not only Premier's CEO, but also the CEO and chairman of VVV (holding "[m]ore than 75% of voting rights" for that entity) -- identifies VVV as the true operator of the Hotel Valcartier but does not explain Premier's relationship to VVV. Instead, Burke states that VVV operates the Hotel Valcartier, manages contracting and rental of hotel rooms at the Hotel Valcartier, and markets for the Hotel Valcartier. Notably, affidavits or declarations must be based on the personal knowledge of a competent affiant. See Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000); Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175 n.6 (10th Cir. 1992); Milford Power Ltd. P'ship v. New England Power Co., 918 F. Supp. 471, 478 (D. Mass. 1996). By proffering a declaration in his capacity as Premier's CEO, Burke appears to be asserting "personal knowledge" of VVV's activities in that capacity. Absent further explanation of the relationship between the two entities and his role in both, Burke's assertion of personal knowledge regarding the hotel's operations, contracting, and marketing is in some tension with his denial that Premier is involved with the hotel. Burke's declaration thus suggests a "serious ambiguity about the manner and capacity in which" Burke "[is] acting," and raises a question of whether Premier and VVV "function as agents of one another." Sigros, 129 F. Supp. 2d at 64 (quoting My Bread Baking, 233 N.E.2d at 752).

In sum, the "evidence adduced by the [P]laintiffs," together with Burke's declaration, "give[] rise to a permissible inference that" Premier may be involved in the operations of Hotel Valcartier; and, further, "[t]he self-serving [declarations]" Premier submitted "are not so powerful as to resolve the matter definitively, . . . where the [P]laintiffs have introduced some contravening evidence and have had no opportunity to conduct related discovery." Blair v. City of Worcester, 522 F.3d 105, 114 (1st Cir. 2008) (footnote omitted). Plaintiffs have therefore sufficiently contested Burke and Cerbo's statements that Premier is uninvolved in the hotel's operational, advertising, and booking activities to at least merit jurisdictional discovery.

Generally, "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997) (emphasis omitted). The "entitlement" to such discovery "is not absolute." Id. To merit jurisdictional discovery, plaintiffs must demonstrate diligence by "present[ing] facts to the court which show why jurisdiction would be found if discovery were permitted," Swiss Am., 274 F.3d at 626, and "explain[ing] . . . what relevant information [they] hope[] to glean through such discovery," Motus,

23 F.4th at 128. Even where plaintiffs meet those requirements, "the district court still has 'broad discretion to decide whether discovery is required.'" Swiss Am., 274 F.3d at 625-26 (quoting Crocker v. Hilton Int'l. Barb., Ltd., 976 F.2d 797, 801 (1st Cir. 1992)). We will not reverse a district court's decision not to allow jurisdictional discovery unless the order was "plainly wrong and resulted in substantial prejudice." Swiss Am., 274 F.3d at 626 (quoting Crocker, 976 F.2d at 801). Plaintiffs have shown to our satisfaction that this standard has been met as to Premier.

Plaintiffs diligently sought jurisdictional discovery regarding Premier. Citing to Premier's LinkedIn profile, which indicates Premier has employees in Canada, Plaintiffs requested specific discovery into "the roles of these [Premier] employees at Hotel Valcartier, including its maintenance and marketing." Unlike their more generic requests to "explore the chasm" between Premier's public statements and its affidavit and to gather "full details" regarding Premier's operations, on which the district court focused, this is a tailored request for discovery on a specific jurisdictional issue genuinely disputed by the parties -- that is, whether Premier employees participate in the maintenance of the Hotel Valcartier and marketing of that hotel to residents of Massachusetts, and/or whether there is a confused intermingling of Premier's and VVV's activities. It is plausible

- 22 -

that discovery into this question could justify the exercise of personal jurisdiction.

Thus, the district court abused its discretion by disallowing jurisdictional discovery into Premier's relationship to VVV and involvement in the Hotel Valcartier's operations -- particularly its advertising to, and booking rooms for, Massachusetts residents -- on the basis of faulty legal conclusions, namely that Plaintiffs had "fail[ed] to raise sufficient evidence" that Premier "had any involvement in the operation or advertising of the Hotel Valcartier," "fail[ed] to adequately address the affidavits proffered by Defendants," and "fail[ed] to state why jurisdiction would be found if discovery were permitted." This abuse of discretion substantially prejudiced Plaintiffs by making it impossible for them to pursue their claims against Premier any further. Plaintiffs have "identif[ied] a non-frivolous dispute about facts" -- specifically, Premier's involvement with the hotel's operation (including advertising and room-booking activities) and the Premier-VVV relationship -- and discovery into these facts "may yield a sufficient predicate for in personam jurisdiction." Motus, 23 F.4th at 128. We therefore remand to the district court with instructions to allow jurisdictional discovery consistent with this opinion.

### b. EPR

The outcome is different as to EPR. Seeking to contradict EPR's declaration that its subsidiary, Valcartier Property LP -- and not EPR itself -- owns the property on which the hotel sits and leases that property to VVV, Plaintiffs point to various public statements by Defendants, although in a manner that largely bundles their arguments against EPR with those they assert against Premier. See Rodríguez-Rivera, 43 F.4th at 160 (holding that plaintiff's "bundled arguments and evidence," which failed to distinguish between two defendants, were insufficient to establish personal jurisdiction over one of the defendants). We do not find Plaintiffs' arguments persuasive.

Plaintiffs point first to company statements, including EPR's "Company Release" that indicates EPR was "acquiring the Village Vacances Valcartier resort and hotel" and Premier's similar statement indicating the Calypso-Valcartier Group (which includes the Village Vacances Valcartier) was welcoming EPR as a "new property owner." We are not fully convinced these company statements pose a true conflict with EPR's affidavit: it may be true both that EPR -- as a real estate investment trust -- was (in a colloquial sense) "acquiring" the property and that it only did so via a subsidiary. Similarly, Plaintiffs point to a page from EPR's website indicating that the Hotel Valcartier was part of EPR's overall portfolio, but that does not directly contradict the

evidence showing that one of EPR's subsidiaries owned the property. Plaintiffs also point to an excerpt of EPR's 10-K filing, which indicates EPR owned property in Québec, but this too does not contradict EPR's declaration, because the 10-K may encompass subsidiaries' assets.[8]

Even if Plaintiffs' documents sufficed to genuinely contest EPR's sworn statement that it does not own the hotel, that would only get Plaintiffs so far. Plaintiffs must also allege facts justifying personal jurisdiction under the Massachusetts long-arm statute, and their theory that such jurisdiction exists under Section 3(a) of that statute begins and ends with their claim that EPR advertises and markets the hotel to Massachusetts residents and contracts with them to reserve rooms. See Mass. Gen. Laws ch. 223A, § 3(a). Yet none of Plaintiffs' evidentiary proffers create a genuine conflict with EPR's sworn statements that it is not involved "in any marketing or advertising of the Hotel Valcartier in the Commonwealth of Massachusetts" and that it did not "solicit business directly from consumers such as the Plaintiffs," "have any direct communications with consumers regarding the Hotel Valcartier," "contract[] with the Plaintiffs for the rental of any rooms or the provision of any other services

---

[8] We note that Plaintiffs do not introduce any argument or evidence suggesting jurisdiction as to EPR based on the actions of its subsidiary. See Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 70 (D. Mass. 2001).

to them at the Hotel Valcartier," or "operate or maintain the Hotel Valcartier's website" or "any social media accounts related to the Hotel Valcartier."  Because Plaintiffs failed to counter these statements, these jurisdictional facts are controlling.  See Chen, 956 F.3d at 56.[9]

To the extent Plaintiffs assert that the district court abused its discretion in failing to permit discovery as to EPR, we disagree.  As we note above, the district court "has 'broad discretion to decide whether discovery is required.'"  Swiss Am., 274 F.3d at 626 (quoting Crocker, 976 F.2d at 801).  Because Plaintiffs have not made a "colorable claim of jurisdiction," we conclude that jurisdictional discovery is not appropriate as to EPR.  Motus, 23 F.4th at 128.  Moreover, Plaintiffs' discovery request as to EPR was made "in a most skeletal manner," Stokinger v. Armslist, LLC, 166 F.4th 229, 245 (1st Cir. 2026), and by failing to "flesh out [their] description of the types of contacts [they] hope[d] to discover," Plaintiffs were not "diligent in preserving [their] rights to be entitled to jurisdictional discovery."  Swiss Am., 274 F.3d at 626.  The district court therefore did not abuse its discretion in denying Plaintiffs'

_____

[9] For much the same reason, Plaintiffs fail to satisfy the relatedness prong of the relevant analysis under the Due Process Clause.  See Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 208-09 (addressing relatedness); Nandjou, 985 F.3d at 148 (same).

- 26 -

request for jurisdictional discovery.  Id.; Motus, 23 F.4th at 128.

Accordingly, dismissal as to EPR was appropriate.  The dismissal, however, should have been without prejudice.  It is well-settled that dismissals for lack of personal jurisdiction "should ordinarily be made without prejudice." Rodríguez-Rivera, 43 F.4th at 162; see also N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009).  Although EPR did request dismissal with prejudice, it did not explain in its briefing why that designation was appropriate.  Further, the district court did not discuss the standard for dismissal with prejudice nor justify that designation at all.  Though it is true that courts "generally grant the relief requested of them" by the winning party on a motion to dismiss, Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 50 (1st Cir. 2014), the district court's dismissal with prejudice does not appear to be justified.  As EPR acknowledges on appeal, this error can be remedied simply by modifying the judgment. See 28 U.S.C. § 2106. Accordingly, we "modify the judgment to state that dismissal of [EPR] is without prejudice." Rodríguez-Rivera, 43 F.4th at 162.

## III.

For the foregoing reasons, we **reverse** the dismissal of Plaintiffs' claims against Premier and **remand** with instructions to the district court to permit jurisdictional discovery into

- 27 -

Premier's relationship to VVV and involvement in the Hotel Valcartier's operations, including advertising and room booking activities.  We **affirm** the district court's dismissal of Plaintiffs' claims against EPR for want of personal jurisdiction but **modify** the designation to be without prejudice.